All right, thank you. Mr. Yellen. Good morning, Your Honors. May it please the Court, I'm Louis Yellen from the Department of Justice, here today representing the Bureau of Alcohol, Tobacco, Firearms, and Explosives. In an attempt to improve the gun tracing system, ATF sought information from less than 1 percent of all gun dealers whose guns were the subject of approximately 50 percent of all gun traces in a single year. In this case, the district court held that ATF lacked statutory authority to send the demand letter to J&G. In that – in concluding that way, the district court fundamentally misconstrued Section 923 of the Gun Control Act. As the Fourth Circuit held in a case involving the very same demand letter that's at issue here, Section 923g5a gives ATF express authority to demand any information a licensee is required to keep under the statute. The district court rejected that interpretation because it thought that the interpretation would render superfluous other provisions of Section 923. That was mistaken. Under the interpretation we urge and the interpretation that the Fourth Circuit adopted, the provisions the district court identified retained independent vitality. In fact, the district court's alternative construction leads to the very problem that the district court sought to avoid. The district court held that ATF could use its demand letter authority only when other provisions in the Gun Control Act authorize ATF to seek information or require licensees to provide information. But if that's correct, the demand letter provision, the only work that that provision does is to authorize the agency to send a letter. And surely Congress did not need to enact a provision to give authority to an agency to send a letter to a regulated entity to provide information that the entity already was obliged to provide. Sotomayor, if I understand it correctly, this would be apart from any particular request for tracing? Yes, that's exactly right, Your Honor. But it's apart from any actual enforcement proceeding that's going on, right? That's exactly right, Your Honor. This is not part of a ---- Well, I understand that there is no request, and, in fact, there is a specific statement that the licensee should not report the name of the person who either sold or bought a second-hand gun. Still, a great deal of information is being requested and kept. It is being transferred to a Federal agency. That comes somewhat close to sounding like maintaining a register. Why isn't it doing that? Well, Your Honor's, I believe, referring to the limitations on ATF's authority that exist in Section 926a. It's not creating a registry in the sense in which 926a, and Congress more generally in the Appropriations Act from 1979 to the present, have intended. We know that for the following reason. First of all, Congress was reacting to, originally in 1979, to a specific proposal by ATF to require registration of all firearms owners and licensees, so a database containing information of all owners and licensees in the United States. How much information would be too much to create a registry, in effect, to invoke the concerns of the limitation? Yes, Justice O'Connor. I think that one would have to look not at the quantity of information sought from any particular licensee. Again, in this case, we've got less than 1 percent of all gun dealers. But I think the most important criterion would be the number of dealers that were whose information was requested. Yeah, but in your theory, that small number is essentially the whole pie with regard to this per --" with particularly interesting guns. Well, Your Honor, I mean, it's you're exactly right, but that's why we think we're right. There's not an inconsistency here. I understand that. But then doesn't that mean that the accumulated information is fairly substantial? Not in the --" again, not in the sense Congress intended. We know that Congress intended for ATF to maintain records, Your Honor. In the same legislation that enacted G-5A, the demand letter provision, Congress enacted sections G-3, G-4, and G-6, which are provisions which make specific requirements on licensees to provide information to ATF to be kept. So just for example, under subsection G-4, if a licensee, a gun dealer, goes out of business, the licensee, as you know, is required to keep on its own premises information about its dispositions and acquisitions of guns. If it goes out of business and there's no successor to that business, under the statute, Congress has required the licensee to ship all of that information to ATF to be maintained precisely in order to allow ATF to conduct traces of those guns if law enforcement asks for a trace of a gun that was in that inventory. So we know that Congress did not intend an absolute prohibition on keeping information. Now, as to the other question, Justice Sotomayor, how do we look at that? What's the test? Yes, Justice. Again, I think that the percentage of licensees being requested would be an important factor. I'm not prepared to date anything else. There could be other things as well, perhaps, Your Honor. For instance, the ---- You just say less than 1 percent isn't enough, and beyond that, you don't go. Let me ask you this. The letter that was issued here, that was a departure from the Bureau's traditional method of collecting information, wasn't it? I don't believe it was a departure, Your Honor. It was not something that the Department had done before. If that's what you mean by departure ---- Not done this before. Yes, Your Honor. That's certainly true. And in that sense, it was a departure. Yes, Your Honor. That's certainly true. Now, did the Bureau have that power all along, and it had chosen never to exercise it? Yes, Your Honor. Again ---- Why did it never do this before, if that was necessary information and needed? Why was it the Bureau had never done this before? Because the Bureau hadn't had the factual basis. They performed a study, the Commerce and Firearms Study, which is in the Joint Appendix. It's part of the administrative record. And that study indicated that a very small number of licensees was responsible for a very large number of ---- Was that the first time the Bureau realized that with this very small number, maybe they could help the situation by sending out this letter? Precisely, Your Honor. It was on the basis of this research, and the ---- But it was a new approach that had not been followed before. It had not been followed before, Your Honor, yes. But it's not a new rule in the sense that 926 is concerned with, because, Your Honor, 926 is concerned about rules and regulations. And here, the agency ---- You say that a letter like this would have been valid all along. They just had never done it. Yes, Your Honor. It absolutely would have, in part because it could have been sent out as part through the ---- under the authority of the agency's regulation that was enacted in 1968, long before Section 926 was enacted. And as we know, Section 926 prohibits rules and regulations after the enact of the enforcement date. Well, this is under 18 U.S. Code 923 G5A. Yes, Your Honor. And it says there that the Bureau has authority to send letters to the licensees seeking all record information required to be kept by this chapter or such lesser record information as the Secretary specifies in the letter. What does the lesser refer to in that statute? Lesser than what? Lesser than all of the information. Licensees are required to keep certain information as specified by regulation. So under this provision, the ATF could demand all of that information to be sent. And in the RSM case, which is referred to in the briefs, that case involved a different demand letter that did request all of the information. And the reason why in that case ATF demanded all of the information is because it was dealing with an even smaller subset of gun dealers who were not responding properly to trace requests in the course of a bona fide criminal investigation. And since these gun dealers had shown themselves not to be reliable, ATF requested all of the information so that if they got a trace request for one of those guns, it could turn to those gun dealers' records and provide information for law enforcement to carry out their criminal investigation. Has the letter like this been challenged in other jurisdictions so far? The Fourth Circuit is the only other circuit court to have ruled on it. I'm not aware of the other. It upheld this kind of a letter? It upheld the identical letter sent under this very program. Has it been challenged in other district courts and other circuits? I'm not aware of any challenges, Your Honor. Opposing counsel would probably be better situated to respond. Okay. Thank you. The Fourth Circuit, at least in the earlier case, suggests, going back to Justice O'Connor's original line of questioning, that there is a limit, but they didn't feel like they had to reach it. So how does one know, by looking at the request, whether it's gone too far or not? Well, Your Honor, I think that it's absolutely clear that there are limits that Congress has put on ATF's authority. For instance, we know that it cannot create a national gun registry. That's a very clear limit on ATF's authority. But, Your Honor, just a second. What you are really saying is that you can maintain a national gun registry for a very small percentage of stores, right? I would have ---- It's a registry, is it not? It is a registry, yes, Your Honor. So your argument is you can maintain a national registry, but it's okay if it's for a small percentage. That's what your argument is. The only reason I'm resisting Your Honor's characterization is because of the adjective national. National, as we understand it, refers to a systematic, across-the-board, exhaustive registry. Sure. You say you construe a national registry to mean a registry of all guns across the United States, but certainly it is national in the sense that ATF is a Federal agency. If that's what Your Honor means by it, then exactly, then I would have no problem agreeing with that. You're right. We believe that ATF has the authority to maintain a registry of certain information without violating the prohibitions in Section 926. Yes, Your Honor. I interrupted Judge Reimer's question, so. She's asking how much is too much, which is the point. Oh, yes. Right. Yes. And what's the principle that one can measure it by? Yes, Justice Reimer. Judge Reimer, excuse me. There are various things that the Court would have to look at. For instance, as I said, there are explicit limitations on ATF's authority. If ATF used the demand letter, in the words of RSM, the First Fourth Circuit case, as a ruse to create a national gun registry, that would plainly be impermissible. And, of course, the agency has to act within its authority. It can't act arbitrarily or capriciously. So that would be another sort of limit. In terms of how many licensees is too many licensees, that's a difficult question. Would it have put this over the edge if they'd asked for the names? No, Your Honor. I don't believe so at all. Again, just as in the Fourth Circuit's RSM case, upholding a demand letter exactly like that, that did ask for the names, that's only because here we're only dealing with 1 percent of gun dealers, and it's specifically tied to a specific authority that ATF has, namely to provide assistance in gun tracing and to combat illicit trafficking in guns, it's plainly permissible under the statute, in our view, Your Honor. But isn't it your theory that as long as you don't require everyone to register, it's okay? So under your theory, as I understand it, you would think it's okay to get 90 percent. Well, no, exactly. This is So what's the governing principle if you're not It seems to me that your opponent's at zero and you're at 100. If there's a governing principle otherwise, what's the government's position on how we ought to decide? Your Honor, I'm not at or in a position to give this Court a bright-line test to make a determination. I will concede that it's not 100. If there was 99.8 percent of all of the people All right, so 50 percent? I'm sorry? 50 percent. Well, again, Your Honor, that would be a difficult question. This case is so far from that fact pattern that I could not responsibly But we need some guiding principle. What is it? The guiding principle would be as long as the agency has not sought to undermine Congress's expressed limitations in the statute, for instance, the limitation that we know Congress was responding to as an attempt to create a gun registry of every firearm owner in the country. If this Court can say this is so far away from that, we don't need to worry about the borderline, I think the Court doesn't have to articulate a principle. That's what the Fourth Circuit did? Yes, exactly, Your Honor. That's exactly what it did, Your Honor. There may come a difficult case in which this Court has to grapple with the gray area, if it's 60 percent, if it's 70 percent. Here we're dealing with less than 1 percent, and it's just not – it wouldn't be appropriate for the government to propose a rule when we're not actually faced with the difficult gray area. And in our opinion, respectfully, we don't think that the Court needs to articulate any sort of a bright-line rule when we're so far away from whatever the outer reaches are. It's not bright-line, but it's obviously more comfortable for a judge faced with this situation to have something in mind. Yes, Justice. And I think the something that the Court could avert to is the fact that Congress has limited ATF's authority, and ATF cannot go beyond the bounds of those limits, and that the agency has to act. Do you agree that this is some sort of a national registry? Well, in the sense that Judge Thomas was suggesting, it's national in the sense that a Federal agency is – is holding information. It's not national in the sense that Section – Section 926a prohibits. It's not a – That's a limitation that's in the statute, isn't there? I've forgotten the statute number. I'm sorry. Yes, Your Honor. Well, so I don't understand why that's a pacing item here. I mean, the statute limits transfer to another – to the Federal – to the government. Yes? Of this information? The – the statute prohibits – I'm sorry. I'm sorry. I just lost the number, but I – It's – it's, Your Honor, it's Section 926a. And the statute does prohibit the – the transfer or contents of records to a facility owned, managed, or controlled by the United States. But as the Fourth Circuit, in our view, correctly noted, this is tied to – let me make a couple of points about this, if I may, please. First of all, this is tied to the prohibition against a national firearms registry. In our view, as we've explained, the – the statutory history makes very clear that Congress was responding to ATF's suggestion that it collect information from every single one of the licensees and gun owners. But more importantly, Your Honor, even if this statute were somehow close to the ballpark to being applicable, I'd like to point out that it starts off by saying, no such rule or regulation prescribed after the date of enactment of the Firearm Owners Protection Act. That's in 1986. And this statutory authority – excuse me, this regulatory authority that the agency is acting on was promulgated in 1968. In addition, Section 926a wouldn't apply for another reason. The same act, the Firearms Owners Protection Act, that enacted Section 926, also enacted subsection G5a of – of Section 923. That's, again, the statutory provision. So that's yet another reason why this limitation wouldn't apply. And lastly, Your Honor, this letter is not a rule or regulation. As the Fourth Circuit determined, it is, if anything, under the APA, an informal adjudication. As this Court in Yesler-Terrace explained, an informal adjudication applies to a specific subset of – of entities or individuals and has immediate effect. A rule or regulation is broad and in general. It doesn't – it applies to an indeterminate number of people and has only prospective effect. So, again, this prohibition against certain rules and regulations doesn't apply to a letter such as this, which is neither a rule nor a regulation. Lastly, I would suggest, Your Honors, that the other alternative basis upon which J&G is urging affirmance that the decision was arbitrary and capricious is simply not sustainable on this record. The agency made a comprehensive study. Both the determination of the class and the determination that J&G is in the class are amply supported. If the Court has no further questions, I'll reserve the remainder of my time, if I may. Ginsburg. Okay. I think – I think we don't. Mr. Gardner. Thank you, Your Honors. Good morning, Your Honor. Richard Gardner for J&G Sales. I'd like to start out, actually, by responding to the – this issue about 926a and the Appropriations Act. First of all, 926a says – there's no reference to national registration system in either of those statutes. That's something the government – it's a term the government has applied to it. But what 926a refers to is any system of registration of firearms, firearms owners, or firearms transactions or dispositions. It's incredibly broad. Congress used that terminology to make sure that the government got it, that there was to be no system. And the system that they have created here, what they have created here is, albeit a limited system, it is still a system of registration. And in the appropriations language, it refers to – prohibits the consolidating or centralizing of the records, any portion thereof, of acquisition or disposition of firearms maintained by Federal firearms license. Now, the Fourth Circuit did not agree with that. The Fourth Circuit did not agree. They – the Fourth Circuit essentially adopted the argument of the government that there's some point below – I guess 1 percent is where they picked. It says that once you get below that in your limited amount of records, it's not a system of registration. Well, we should have some hesitation in creating a circuit split, should we not? Well, I think you should generally. But in this case, I think they're just clearly wrong. The Fourth Circuit is clearly wrong. It ignored the plain language of the statute. Well, I don't know if it did or not. It only depends – it depends on whether you think it's a system of national registration that they're creating. Well, I – Your Honor, again, the statute doesn't talk about national registration. It talks about any system of registration. That could be local, national, limited, narrow, broad, any kind of system of registration. I don't think there's any question. In fact, the government acknowledged that this is a system of registration. Their argument is that, well, because it's below 1 percent, that's okay. And what I would additionally respond to is I think there is a – there is a line that the Court can come up with, and that is this, that the Congress in 923G has come up with a certain – certain types of information that the government can – can get clearly by statute. The government talked about those, the multiple sale forms, the out-of-business dealer records. The question is what is the 925 – 923G5A language referred to? And because there is this clear, I think, ambiguity in the statute, since we can't – since the – What's ambiguous about 923G5A? I mean, it authorizes the Attorney General to require a licensee to submit record information required to be kept or lesser information as specified. I mean, that to me, and at least to the Fourth Circuit, is just crystal clear. Those – I would agree, Your Honor. Those words viewed in isolation are clear. But you can't interpret a statute in isolation. You'd have to look at it. Well, you can start there. You can certainly start there. Say it authorizes a request for information that's – the entire body of information is kept or some lesser quantity of it. Right. But when you look at the remainder of 923G, which you – which I believe you have to do under the Supreme Court case law about when you're trying to determine the meaning of a statute, you don't look at words in isolation. You look at what Congress was trying to achieve. And if you take the government's view that 925 – that 923G5A is incredibly expansive, the government's view essentially, when you get right down to it, is that it has no limits at all, that if they send out a letter, that's enough. It does, despite what the government argues, it does make superfluous. Oh, what are the limitations, if you say there are some? What are they? And the limitations are these, Your Honor. This issue was debated on the floor of the Congress, primarily in the Senate, extensively. We've given you the legislative history, Senator. Well, if the legislative history is – I mean, if the statute's clear, the legislative history doesn't mean this was caught. That's correct. But it's what I'm saying, Your Honor. I think in this context, in the context of 923G altogether, which provides certain – where Congress has set up this elaborate mechanism for what records of gun dealers are available to the ATF, that you have to – that 923G5A becomes ambiguous, because it's not – once you look at the rest of the case. Oh, right. Point to other language that means this is ambiguous, please. And that language would be, in G1A, there's the requirement that the government has to have a warrant to inspect records. Well, but this isn't an entry. No, it's not. That's to enter the premises. That clearly doesn't apply to this. It's an – what it is, Your Honor, the government – It doesn't mean anything to me. I think that's very unpersuasive. That section deals with an entry on the premises. That's not this. May I explain why I think it is significant, Your Honor? Yes. And that is that what the government's position does is say, we don't even have to worry about entry anymore. We'll just send them a letter. And we'll send them a letter that says, we want all your records, the very records that the Congress was intending to protect when it passed that requirement of entry. That's what the whole entry process is about, is to go in and to look at records, to examine the records of the license. Well, let's take an isolated case. Let's assume, regardless of what they've done in the past, they have – the government has information that a lot of guns are being sold by a particular dealership that ends up in the hands of criminals. Do you think that one demand letter such as this would violate the statute? I think if they had probable cause or reasonable cause – Not probable cause. I'm just saying you have the information based on the statistics they're using now. They picked the one dealership out of the entire country that had the highest volume. Do you think they could – they were within the statute? If they are asking for records of sales to – of illegal sales, no. They're well – they're within it under the – under what Congress clearly intended to protect. No, I'm asking they send a letter just like this, but they have – they have information simply because sale to crime time has a – on the aggregate, this particular dealership is selling a lot of guns that end up in the hands of criminals. They don't have any – there's no tracing involved. There's no – Essentially, what you're doing is narrowing the universe down to one. Yes. And I think the answer to that is no. They don't have that authority. Then you're rendering 923 G5A superfluous. Not – no, not at all, Your Honor. I'm talking about – there is a – there is a mechanism, and that's what – that's specifically what was talked about on the floor of the Senate. No one disputed it. Everyone agreed that the sole purpose of 920 – of G5A was to allow the government to get information in the connection with criminal investigations. They specifically used as an example the gun that was used in the Reagan attempted assassination. Where's that in the statute? That – it's not in the statute. It's in the – Well, if it's not in the statute, and the statute's clear, why should we worry about the Reagan assassination? Because, Your Honor, the statute isn't clear. When you put all the rest of it – when you put G5A in context, which you're required to do, you can't read it in isolation. It becomes – G5A itself becomes ambiguous. And that ambiguity allows you to go to try to determine what Congress's intent was, and that intent was clearly spelled out in the Senate debates, in the committee reports. There's no – there's no disagreement. The government hasn't even tried to respond to that, that that's what Congress had in mind. That's what Congress's purpose was in enacting G5A. And Congress understood, because of the – because of the structure that it created in G, that that's – that was what the limited purpose of G5A was going to be. Well, if Congress had really intended that, why couldn't it simply have written that into 923A5G? G5A. I mean, that's simple. I agree, Your Honor. It could have been – it could have been better done. Well, sure. But now that it's ambiguous, what role is there for the agency discretion? If there is a true statutory gap that's ambiguous, and we're not sure about the legislative history if we resort to it, then it's not true Chevron deference, but it's certainly some of the agency interpretation title is some deference. This is – this is, after all, a criminal statute. This isn't in the context of a criminal proceeding, but it is a criminal statute. And I think under the Thompson Center case from the Supreme Court that says that even if you're construing a criminal statute, if you're doing it in a civil context, that there is no deference given to the government in that case – in this case. But we don't get to the – we don't get to the deference question until we – until you do the – use the traditional rules of statutory construction to try to determine what Congress's intent was. And one of those – And that says look to the language of the particular statute. And when you do, it appears to authorize a letter. It appears – it certainly authorizes a letter. The question is how far does that authorize it to go. And that's what the ambiguity is. Well, it's not ambiguous. We don't know exactly, but in these circumstances, less than 1 percent. That's right. But still, we don't know exactly what the limits are, and that's why we have to look at the legislative history to determine what Congress had in mind. I mean, that's a traditional rule. And your position is no letter at all. No, that's not – Well, under my hypothetical, you say one – Under hypothetical, that's right. Yeah. You say you think it's improper to gather this information, period, because it constitutes a system of registration. That's right. That's the position. That's what everyone in the Senate understood it to mean. There's no legislative history to the contrary. This isn't one of these situations where we can't figure out what they were talking about, what they had in mind when they enacted this. It was specifically debated on the floor of the Senate. But why is it national registration if it pertains only to people who've demonstrated, according to the agency, a large number of sales of secondhand weapons that have ended up being used in crimes? I mean, why is that a national registration? Well, there are two responses to that, Your Honor. First of all, it's not – the statute doesn't talk about national registration. It talks about any system of registration. And second of all, the – Well, but it's not – it's implied to be national. It's a – you know, you're talking about the ATF. It's a – I think it is. Yeah. I mean, I think it is. It's fair to say what we're talking about is a national registry. I don't know why you're quibbling about that. I'm quibbling only in the sense that there seems to be the government's view that it has to be every dealer has to be included, every sale has to be included before it's a national registry. So by adopting that word, they create a test which is not in the statute. But for ease of discussion, I don't mind using that word. The second response is that these are dealers, Your Honor, who have not sold guns unlawfully. The government acknowledges that in the demand letter. There's no evidence that these dealers have done anything unlawful. It's just that there have been 15 or more traces that have been conducted to their business, and the government wants information about secondhand firearms that they've sold, not secondhand firearms that they've been used in crime. They just want the information about the guns the dealer has sold. So it is – it is not a situation where they have found a dealer who they think – unlike the first demand letter, which was at issue in the RSM case in the Fourth Circuit, where the dealer wasn't providing the information, and the – this is not that situation. This is the next step beyond that. So you – and if I go back to the other question. Why doesn't that make it more innocuous? Because basically what one could argue is that that's a nexus to tracing, that you've had a significant number of traces for a particular dealer, and so they want some information to assist in future tracing. Well, you're right, Your Honor. That's – that's the logic of it. The question, though, is, is that what Congress has authorized? And what's – what is some evidence of that, and I admit it's not great or not the best legal argument, but is just before this demand letter provision was put out, the Administration proposed legislation to do exactly this. The legislation didn't go anywhere. The next thing we see is the demand letter. What did the legislation state? The legislation would have required all the trace – all trace information to be turned over to the ATF, essentially what the demand letter requires. And the legislation didn't go anywhere, so – so they next do this by sending out the demand letter. I mean, that may be just a coincidence, but that's what happened. Although it – the legislation would have required every dealer to provide such information? Yes. And the demand letter did not go to every dealer. That's true. The demand letter is more focused. So this is quite different. It's different only in that respect. In that respect, yes. Only to a limited number where there was evidence of resale and – or evidence of some criminal involvement. No, evidence that there had been 15 or more traces to that dealer. Right. And of course, as the government now acknowledges in its reply brief, a trace does not mean that a gun was used in a crime. It just means that somebody was curious about how the gun was sold. Right. So there's not even – there's no rational connection between what is being done and the basis for doing it. I'd like to go back, if I might, or continue with – in response to Justice O'Connor's question concerning what other statutory provisions there are which indicate – which are part of this structure that Congress has created. There is, of course, the multiple sale form provision, which is 923 G3, which is a specific statutory direction for submission of records. And there is Section 923 G7, which is also a submission – requires submission of disposition information within 24 hours when ATF makes the request in the course of a bona fide criminal investigation. So Congress – Congress thought about the provisions – the specific provisions that it wanted without there having to be a specific request made by the agency as to when it wanted information submitted. But then it put in, I guess, this general clause, the G5A provision, which said that they're going to be – there's some other circumstances in which they would want that. And as I said, the legislative history is clear as to what that – what that deals with. If I could, I've got a few minutes left. Unless there are questions on that, I wanted to move on to the arbitrary and capricious issue for a minute – for a few minutes. As I noted, ATF has conceded now in its brief that a – the guns that are traced are not guns that are used in crimes. They are guns that are – are found by some law enforcement agency and traced. And we have absolutely no idea in this case whether the 16 firearms which were traced to J&G sales were, in fact, firearms that were used in crime. We requested that information in the district court. Is it unreasonable to draw the inference that underlies the request? Which inference? That because they're used – because the 16 guns were traced, therefore – Within – within – within three – within three years. So the guns are crime-related. Well, it's unreasonable in light of the fact that the government has now conceded, which it didn't – which the demand letter doesn't do. They've now conceded in their reply brief that these are not guns that were used in – not necessarily guns that were used in crime. Not necessarily, but they was – it was being traced for a criminal investigation. Absolutely not. Absolutely not, Your Honor. They've now – Why would they be traced? Lots of reasons, Your Honor. The – there's – I've quoted in my brief part of the Congressional Research Service study on this. Guns are traced because they're found at the scene of a suicide. They're traced because someone turned – Suicides are crimes in some jurisdictions. Some – well, not where the gun wasn't used in the suicide. I mean found at the scene of a suicide. So might have been. Might have been. Guns that are turned in by people who don't want them anymore, those are traced. There's a whole universe of reasons firearms are traced. And use in crime is actually probably a minority of reasons that it's traced. So – and as I said, the – now that we – that's been conceded by the government, we have it – the question about whether the – whether the connection – whether there's a rational connection between the government's request and the basis for it now is a – I think a much clearer question. The statute which provides, as I mentioned, for the authority to require the dealer to turn in – to respond to a trace says only – refers only to the course of a bona fide criminal investigation. And we now know that the traces here may be a lot more than that. So we don't know that there's a rational connection anymore. Even if you assume that they were tracing only crime guns, yeah, there might have been a rational connection between what they decided to do and getting information about secondhand guns. But now, in light of this, that rational connection, I think, has evaporated. I thought the request was not only related to trace requests, but they were on guns with times to crime of less than three years. They were all – they were all trace – they were trace requests. And the time to crime refers to the time between the sale of the gun and the time it was recovered. But as I said, now the government has now admitted that it's not time to crime, actually. It's time to pick up. The time to recover is now – is what that is. It's not time to crime. And that makes it irrational. That makes it – that makes it irrational. Because the alleged basis was that these were guns that were going – being used – being sold by the dealer and being used in crime. Therefore, it's legitimate to determine what other guns he might be – to trace other guns that might be used in crime. But if they're not being used in crime, then the rational basis disappears. And as I said, we had tried to get the information from the government and the district court to determine if, in fact, these were guns that had been used in crime and were not able to get it. The district court concluded that that was immaterial for summary judgment purposes, so we didn't get that issue resolved. But I think now, at a minimum, the case needs to be remanded to – on that issue to allow it. We might not even have to be here if it turns out that they – that there's 14 guns or less than that that were actually involved in crimes. Because then the whole basis for the demand letter disappears. Unless the Court has any other questions, I see I've got – my time is just about up. I don't think so. Thank you, Mr. Berger. Thank you, Your Honor. Mr. Yellen. Counsel, you don't have much time. Would you address yourself to the last point? Yes, Your Honor. That's exactly what I was going to do. Counsel – opposing counsel mischaracterizes the government's view. We've not conceded a single thing. What we said in our reply brief was that counsel's argument that we have not proved that these guns were used in a crime is a red herring. The standard that ATF used to determine the class of dealers to receive the letter was whether 15 or more traces were conducted within a year, and those traces were conducted within three years of the original sale of the gun. That's it. It is undisputed on this record that there were 16 traces to J&G in 2002. But those traces, he says, are probably not for crimes. Well, first of all – All kinds of other things. First of all, there's no basis for that assertion. That's just counsel's speculation. Well, how about your assertion? Were they or were they not for crimes? Any trace is conducted as a result of a request from law enforcement. And I would say this, Your Honor. Just as a matter of common sense, guns are not like newspapers. When they're abandoned, it's very much of interest to law enforcement. Second of all, the point is that there is no need to establish whether these particular guns were used in crimes or not. The point is these guns were – if the traces – if there were 15 traces, that means that there were 15 – more than 15 times that guns came to the attention of law enforcement, and law enforcement decided that it thought it needed to determine whether or not the guns had some criminal connection. So this whole line about there not being evidence in the record that the guns were used in crime is completely irrelevant to the criterion that the agency used. The only other point that I'd like to make – Do you agree with the assessment that even in the report upon which your letters were based and the system was based, that time to crime didn't mean time to crime? Time to crime, we say in the – in our brief, is a term of art that's used to mean time from recovery at a crime scene or time from trace to the original sale. Sometimes the time from recovery from a crime scene is not known. Sometimes the only information that the agency had was trace. So there are – so time to crime encompasses – it's a more inclusive concept. Do you disagree with your opposing counsel's assertion that the majority of traces are unrelated to crime? I do disagree. That's not something that's in this record. But again, just as a matter of common sense, I would suggest that, you know, law enforcement doesn't trace guns just for the heck of tracing guns. There's a reason why that guns are regulated in this country, and there's a reason why, as a regulated entity, gun dealers have an obligation to report information concerning traces to law enforcement. That's because Congress recognized that guns are used in crimes and that tracing is a valuable tool for helping law enforcement solve crimes. So the only last point, if I may make this, is the same Congress that enacted 926A is the Congress that enacted 925G5A. So it simply cannot be that Congress intended to have the narrow construction that counsel suggests. Thank you very much, Your Honors. Thank you, counsel, both of you, for the matter – for your argument. And the matter just argued will be submitted. Before hearing argument in the final case in the calendar, the Court will take a brief recess.
judges: O'connor, Rymer, Thomas